We have five cases on the calendar this morning, three patent cases, two from the district courts and one from the Patent Office. We have a case from the Court of Federal Claims and one from the Veterans Court. The latter and one of the patent cases are being submitted under briefs and will not be argued. The first case is KC Resources v. United States, 2014-51-42. Mr. Tanner. Good morning, Your Honors. May it please the Court, my name is Jack Tanner. I'm with Fairfield & Woods in Denver, Colorado. We are here today on the appeal of an order dismissing my client's claim for a wrongful taking, a claim for breach of contract and the contemporaneous denial of a motion to amend to bring in as an involuntary plaintiff a party to the contract to get around a privity problem. How would that get around a privity problem? As we understand the law, Your Honor, we can, as under the Devonshire case, we can bring in BP as an involuntary plaintiff and BP is in privity with the government. I'm not sure that that solves your privity problem. Certainly BP is in privity with the government, but I don't know why bringing them in solves your privity problem. That's my reading of the Devonshire case, Your Honors. That's exactly what the subcontractor did. He brought in the contractor as an involuntary plaintiff. That case was allowed to proceed. I would note, Your Honor, that the trial judge in his original order specifically said that he would typically grant the motion to amend and allow that to happen, to bring in BP as an involuntary plaintiff to get around the privity problem. The only reason he did not do so, he expressly found in the original order, was it would be futile because of this document which unfortunately has become the center of the case regarding the takings part of the case. What is the Devonshire case? I don't see that cited in your brief. It would be Devon Energy. Don't you, Devon Energy? Oh, I apologize. Yes, I think you mean the Court of Federal Claims case, not a Federal Circuit case, called Devon Energy. Yes, Your Honor. I apologize. I apologize. So there's no authority from our court that would be BP? That is correct. That is correct. But I think the legal analysis is the same in my view, and I would find that authority persuasive. But this particular judge didn't, right? Because this particular judge concluded that at the time of plugging, KCR was nothing more than a disinterested third party. What's very interesting to me about this case is the judge was so very clear in his original order. He specifically said, and it's cited in our brief and in our reply in this court, he specifically said, I'm not allowing you to amend because it would be futile, and the reason it would be futile is because of this document that BP filed with the Colorado Oil and Gas Conservation Commission, which in other proceedings BLM said is not binding on us, and that was found persuasive. This sort of the rabbit we're all chasing is this outlier document where without our knowledge, my client was the operator at the time, without my client's knowledge, the immediate Let's suppose for the moment that you're, hypothetically, that you're correct, that you were the operator. The notice that you received in January of 08 said you have to plug the well, and if you disagree with this notice, you have a right of appeal. You didn't appeal, right? The client did not appeal. That is correct, Your Honor. Well, what was wrong with the appeal remedy that you had? As I understand it, under the regulations, you have a right of appeal administratively, then you can go to district court, and then go to the court of appeals to challenge this, right? Is that correct? Yes, Your Honor. That is correct. My client had the right of appeal for reasons that I'm not sure I know, and if I know, I probably couldn't tell you the client did not timely appeal. Why doesn't that foreclosed takings claim under the line of cases, you're familiar with lye and raisins? No, Your Honor. But I would say, I think that's the argument that we should be able to make on the merits to the trial court, is that we are not foreclosed under these particular circumstances, given the fact that what happened later was the... Foreclosed for failure to take the appeal to challenge this. The appeal became moot because the well itself was plugged, which we didn't know about at the time. When did that happen? It's in the pleadings. It's December. Well, we were still... I mean, it was outside the immediate appeal period. That is true. We did later file an appeal, which was dismissed as moot because the well was plugged. But so why isn't a timely appeal an adequate remedy? Because the well was plugged outside. The well wasn't plugged by us. The well wasn't... We never plugged the well. I don't understand what that has to do with it. I mean, in order to plug the well, you had an opportunity to challenge that. Your client, for whatever reason, decided not to do that. But if it had timely challenged the plugging of the well, you would have been able to say, well, the well is producing. You shouldn't be plugging it, correct? Maybe. I hope so. I mean, that's... The argument was that the reason the client was a bit flummoxed, I will say this, because the well was producing at the time. And the letter that was sent said, these are the things you have to do. Either get the well producing or you agree to plug it. But because the well was already producing... Or object to the order. Yes, Your Honor. Exactly what you were supposed to do was to say, you're wrong. The well is producing. Please rescind the order. At some point, the client did that. It was determined procedurally improper. Because it was late. Yes, Your Honor. That's correct. And while we were still arguing about that, we found out the well was already plugged and abandoned. So I think under these circumstances... And the reason I keep going back to that, Your Honor, is it sort of mooted the appeal process. I mean, the result was probably ordained... The appeal process didn't work because you didn't avail yourself of it in a timely way. I don't understand how that can lead to a takings claim. Your Honor, I think under the unusual facts we have here, where a third party took action, which mooted our appeal... There was no timely appeal. That's correct. There was not a timely appeal. That is correct, Your Honor. That's a point. Thank you. Going back to a point you had made, Judge Moore, the trial court here specifically said, I would allow you to amend on the contractual argument, except for you made this admission in a parallel proceeding that you were not the operator. And so as a result of that, I'm not going to waste everybody's time, and we're going to go ahead and dismiss the case now, and I'm not going to allow you to amend. What was interesting is we filed the motion to reconsider, the motion under Rule 59, specifically pointing out the trial judge, you relied on this evidence incorrectly. That's not what the evidence showed. And in his order denying the motion to reconsider, he never addressed the futility argument on the motion to amend for the privity problem. The judge specifically... Well, he didn't address it. In his original order, he specifically said, I'm not going to let you amend, and here's why. We showed that was incorrect, and he then just ignored that. In the second order, the denial of 59, he never addresses the amendment or the futility issue. So in answer to your question, Judge Moore, I don't think that's why he found he wouldn't let us amend. It was because of lack of authority. He said it's because it's futile because of this which, as we have shown, is, I don't believe, determinative at all of the issues in the case. The question on standing, going back to the original Rule 12, B1 motion, we have attached to our complaint, and the complaint itself, we allege we were the operator. We attached documents showing we were treated as the operator by BLM. The court should not, at this stage, resolve a factual dispute as to whether we're the operator for purposes of a motion under Rule 12. Our allegations are to be given some leeway, and we should be considered the operator. Well, maybe so, but if we conclude that the denial of the motion for leave to amend was proper because the amendment would be futile anyway, that adding BP doesn't solve your privity problem, we can affirm on that ground, right? You could affirm that. I believe the breach of contract claim on that ground. I don't know if that would get around the takings problem, but that would, yes, if you said bringing in BP as involuntary plaintiff does not solve KC Resources' privity problem, then you could affirm on that ground, yes. I don't think you should, obviously, because I think here we've got some very unusual facts that you don't often see where you've got a party to a contract which is acting pursuant to a direction of the United States government to take action it shouldn't be doing, which is plugging our well while it's operating, and that's sort of the root of the problem in my view. And so I would ask that you reverse the order of dismissal and remand, allow us to amend, and we can get to the merits of the case. I'd save my remaining time for rebuttal if there are no other questions now. We will save it for you, Mr. Tanner. Thank you. Ms. Lynch? Good morning, Your Honors, and may it please the Court. We respectfully request that this Court affirm the decision of the United States Court of Federal Claims dismissing KC Resources' complaint for lack of jurisdiction. KC Resources cannot demonstrate that it possessed a legally cognizable property interest at the time these wells were plugged. The evidence is in— Suppose we disagree with you and we think that there's a fact issue as to whether they were the operator. Can we affirm the contract claim on the ground of lack of privity? In other words, that adding BP would solve the privity problem? Well, Your Honor, respectfully, we do not believe that the addition of BP to this case would solve the privity problem. We do not believe that that Devin case is necessarily correctly decided. There is no— The underlying KC is an operator, is the operator who had the operating rights at the time. That was his hypothetical. Oh, okay. As I understood it. So if that was true, then what? If that were true, then there could be a question of fact that would require remand to the Court. My question is, since your position is that adding BP wouldn't solve the lack of privity problem, can we affirm on that alternative ground? Adding BP would not solve the privity problem, but if— There's no point in allowing the amendment if adding BP wouldn't solve the privity problem. That's correct, Your Honor. That's correct. The amendment would be futile in this case. In addition, because the only evidence that has been produced so far is the evidence from BP terminating KC Resources' operator status as of September 1, 2009, there's been nothing presented in any of these proceedings below, and it is KC Resources' burden to demonstrate jurisdiction in the Court of Federal Claims, and KC Resources never presented anything to refute the BP's notices that it provided to the Colorado Oil and Gas Commission terminating KC Resources' operator status effective September 1, 2009, and then the Wells— Does BP have the authority to make that termination? Yes, BP does have that authority under BLM's regulations at 43 CFR 3100.0-5E. But isn't that—I'm definitely not familiar with all of BLM's regulations, but isn't it true that BP only has that authority if they submit their request to terminate KC's operator license to the Bureau and get its approval to do so, and only then do they revert to operator status? No. There was no requirement at the time that this termination occurred for BLM to approve any of those change in operator status. In fact, the BLM's regulations specifically state that the arrangements between the lessee and any sub-lessees are left to the parties, and BLM is not a party to those actions. Did KC indicate in writing that it was an operator? Originally it did, yes, Your Honor. And there is a difference between operator for purposes of BLM's regulations and an operating rights owner, and that really is the crux of this problem. If you look at BLM's regulations at 43 CFR 3160.0-5Q, it defines an operator as any person or entity including but not limited to the lessee or the operating rights owner who has stated in writing to the authorized officer that it is responsible. And so in this case, KB Resources is the only party. Okay, let's back up for a sec. I think I may have been confused. I said doesn't BLM have a reg that requires approval, but it wasn't the reg. My law clerk has texted me an indicated note with the lease itself. The lease the government had with BP expressly has a provision that states any transfer of operators effective only after approval of the director of BLM. Is that incorrect? No, Your Honor, and that is correct. So the lease itself, the very contract the government instituted with BP says that the government will not consider anyone to be the operator until such transfer has been submitted and approved to the director of BLM. And that's precisely because of the situation that we have here because we have... Wait, let me translate some of the facts. So we had a transfer from BP to KCR that was properly submitted to BLM and they approved, correct? That was the original transfer of operators. That all happened. It may not have been BP at the time as the lessee, but yes, KC Resources did have operator status. And then we have a letter that BP sent to the Colorado Commission saying we're taking back over these rights. But what we don't have pursuant to this contract is actually them achieving operator status because they didn't pursuant to the lease get re-approved as the new operator by virtue of an approval from the director of BLM. But that is where the regulations come in and indicate that any of those transactions do not require that type of approval. You're telling me the regulations can trump the contract that these two parties established? The government, don't you think it's important that the government by contract can put into place into a contract terms so that it is always clear who it is dealing with and that it will only deal with an operator that it has approved of? I mean, I'm very nervous about what you just said because I think it would really screw the government to be honest. I think the government has a right to demand by contract that you can only transfer a lease or any portion of a lease, the operator rights, if we approve of the person to whom you're transferring it. And I don't think you would disagree with that, right? The government has the right and you would see why it would benefit them to have that in the contract. Yes, Your Honor. And in this instance, what occurred here was the government was attempting to contact KP Resources to indicate whether or not these wells were producing and paying quantities. KP Resources ignored those various notices. Well, right. That may be true, but that's a different point. I mean, they certainly were the operator at the time they received those notices. That is correct, Your Honor. And I'm not sure exactly what the takings claim here is, whether it's the plugging of the wells or the order to plug the wells. But this gets back to the question we were exploring earlier, and that is whether their takings claim is barred because they didn't avail themselves of the administrative remedy that they had. Yes, Your Honor. That is our alternative basis for dismissing this case because this is essentially a collateral attack by KP Resources on that original plug and abandon notice. And so, that collateral attack should not be permitted in the Port of Federal Claims as a takings case because they're basically challenging the authorized action of the... They're not permitting, they're not admitting that it's an authorized action. So, that should be dismissed. It could be affirmed as an alternative ground under 12b6 for failure to state a claim. So, we can affirm a dismissal for lack of standing under an alternative 12b6 ground? Is that what you're saying? We argued in the alternative below, so the dismissal could be affirmed under that ground as well. And as I noted earlier, we don't concede that the Devin case was correctly decided. The addition of BP would not cure the privy problem. And for these reasons and the reasons outlined in our brief, we respectfully request that this Court affirm the decision of the Port of Federal Claims. Thank you, Ms. Lynch. Mr. Tanner has some rebuttals on? Just briefly, Your Honor. One is, I do take a step back and wonder why we're arguing about the significance of evidence. Again, this is a motion to dismiss and this is an appeal from a motion to dismiss. And when we start arguing the significance of evidence, I think we've This was that we've alleged in the complaint we were the operator and we attest documents to the complaint showing we were the operator at the time. And I think that should be enough to survive this 12b1 attack. I do disagree with Ms. Lynch about saying we've not alleged the action was authorized. That's an argument that was made in response and I thought we cleared up in our reply. We admit these actions were authorized and that's what resulted in the, we believe, wrongful taking of property. Thank you. Thank you, Mr. Tanner. We'll take the case under advisement.